UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


NANCY LYMAN,              )

                                    )

           Plaintiff,      )

       v.                   )          CIVIL ACTION

                                    )          NO.  17-11530-JGD

UNUM GROUP and UNUM LIFE     )

INSURANCE COMPANY,        )

                                    )

          Defendants.    )


## MEMORANDUM OF DECISION AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

May 10, 2019

DEIN, U.S.M.J.

### I.  INTRODUCTION

This matter is before the court on cross-motions for summary judgment by the plaintiff

Nancy Lyman ("Ms. Lyman" or the "plaintiff") and defendants Unum Group and Unum Life

Insurance Company (collectively, "Unum" or the "defendants").  Ms. Lyman worked as a public

school teacher in the Revere Public Schools and for years paid premiums on short term and

long term disability insurance policies managed by Unum.  After leaving teaching, Ms. Lyman

applied for both long term and short term disability coverage under her policies.  Unum denied

both claims as untimely.  Ms. Lyman administratively appealed those decisions, and the denials

were upheld.  Ms. Lyman then filed for relief from this court.

Both the plaintiff and the defendants now move for judgment as a matter of law.

Ms. Lyman argues that Unum inconsistently interpreted the language in her policies in denying

her claim as late.  Alternatively, she argues that Unum's determination was unreasonable

because under the language of the insurance policies, if it was impossible for her to file within the allotted time, she should have been given an extra year to file her claims and Unum should have only denied her claims as late if Unum was prejudiced by the late filing. Ms. Lyman argues that it was impossible to file on time because of misrepresentations that Unum made to her and because of her medical condition. Unum, on the other hand, argues that it made a reasonable assessment under the language of the policies that it was possible for Ms. Lyman to file on time and that she did not. For the reasons herein, the court rules that Unum did not abuse its discretion in denying Ms. Lyman's claims. Unum appropriately interpreted its own policies, made a reasoned decision based on sufficient evidence, and was not required to show prejudice. Thus, Ms. Lyman's Motion for Judgment on the Record (Docket No. 47) is DENIED and Unum's Motion for Summary Judgment (Docket No. 44) is ALLOWED.

## II. <u>STATEMENT OF FACTS</u>[1]

### A. <u>The Policies</u>

Nancy Lyman was a teacher in the Revere Public Schools and resigned from that position on June 24, 2014. (<u>See</u> PF ¶ 11). Ms. Lyman, through the Revere Public Schools, had disability

---

[1] Unless otherwise indicated, the facts herein are derived from Plaintiff Nancy Lyman's Statement of Material Facts (Docket No. 49) ("PF"); Defendants' Response to Plaintiff's Statement of Material Facts (Docket No. 55) ("DR"); Exhibits attached to Plaintiff's Memorandum in Support of Her Motion for Judgment on the Record (Docket No. 48) ("Pl. Ex. __"); Exhibits attached to Plaintiff's Reply Brief in Support of Her Motion for Judgment on the Record (Docket No. 59) ("Plaintiffs' Reply Exhibit __"); the Affidavit of Nancy Lyman submitted in support of Plaintiff's Motion for Judgment on the Record (Docket No. 60) ("Lyman Affidavit"); the Affidavit of Vincent Giordano submitted in support of Plaintiff's Motion for Judgment on the Record (Docket No. 61) ("Giordano Affidavit"); Defendants' Statement of Material Facts (Docket No. 46) ("DF"); Plaintiff's Response to Defendants' Statement of Facts (Docket No. 52) ("PR"); the Affidavit of Deborah Teter, submitted in support of Defendants' Opposition to Motion for Summary Judgment (Docket No. 54) ("Teter Affidavit"); and the Administrative Record, which has been submitted under seal at Docket No. 50 and will be referred to herein by applicable volume and page number ("AR __: __").

insurance coverage governed by a plan (the "Plan") issued by Unum to the Massachusetts Teachers Association ("MTA"). (PF ¶ 2; DF ¶¶ 1-2). The Plan provides two policies under which Ms. Lyman was covered: the first provides short-term disability ("STD") benefits and the second provides long-term disability ("LTD") benefits.[2] (DF ¶ 1; PF ¶ 4). The policies are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (AR III: CL-STD-922; AR I: LTD-POL-37).

The Plan includes a provision, applicable to both the STD and LTD policies, which provides deadlines for the filing of claims ("the Provision"). The Provision reads as follows:

> When do you notify Unum of a Claim?:
>
> We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Unum written proof of your claim no later than 90 days after your elimination period. If it is not possible to give proof within 90 days it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

(PF ¶ 8; DF ¶ 3; AR III: CL-STD-927). The elimination period for an STD claim is 30 days and for an LTD claim is 180 days. (DF ¶¶ 4-5; PF ¶¶ 9-10).

Ms. Lyman claims she has been disabled since the last day of her job, June 24, 2014. (DF ¶ 6; PR ¶ 6). Calculating from that date of disability, the parties agree that the applicable time-tables for filing an STD and LTD claim under the Plan are as follows. Ms. Lyman's claim for STD benefits was due by October 23, 2014 (90 days after the end of the 30 day STD elimination period), unless it was not possible for her to do so or unless she lacked legal capacity. The

---

[2] A copy of the STD plan can be found in the record at (AR III: STD-CL-922-961). The LTD plan can be found at (AR I: LTD-POL-32-45). The court notes that it appears that the first 31 pages of the LTD policy are missing from the Administrative Record filed with the court.

proof of loss for the LTD claim was due by March 22, 2015 (90 days after the end of the 180 day LTD elimination period), unless it was not possible for her to do so or unless she lacked legal capacity. As addressed in detail below, Ms. Lyman filed for STD and LTD benefits, at the earliest, in June of 2015.[3] (DF ¶ 7; PF ¶ 13; AR II: CL-STD-17-19; AR VI: CL-LTD-1015).

The parties' principle disagreement, and the question for the court on summary judgment, is whether Unum abused its discretion in denying Ms. Lyman an extra year to file her claims under the "possibility" language of the Provision. If it was possible for Ms. Lyman to file her claim in the allotted amount of time, her claims were late. If it was not possible for her to do so, she is afforded an extra year under the language in the Provision and her claims were timely.

Importantly, the plain language of the STD and LTD plans grant Unum discretion in interpreting the language in its policies. The Plan provides that "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (AR II: CL-STD-167). The Plan further elaborates:

> The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

---

[3] This date is disputed by the parties as addressed *infra*. June 2015 is the earliest of the proffered dates.

(AR II: CL-STD-199-200).  As discussed herein, this language gives Unum discretion to interpret language in the Plan, including the Provision and its "possibility" language.

### B. Potential Misrepresentations by Unum

Ms. Lyman claims that one of the reasons why it was impossible to file her claim on time was because Unum misrepresented to her over the phone that she was not eligible for benefits. Ms. Lyman claims, through affidavits submitted in both this case and in her administrative appeal, that in March of 2015, she, along with her best friend, Vincent Giordano, contacted Unum and the MTA to discuss her disability and desire to file claims for STD and LTD benefits under the Plan.  (PF ¶ 19; AR III: CL-STD-820; Lyman Affidavit ¶¶ 15-16).  Unum disputes this fact.  (DR ¶ 19 (". . . as set forth in the Affidavit of Deborah Teter, there were no communications with Ms. Lyman or a representative of Ms. Lyman prior to June 2015")).[4]  Ms. Lyman claims, and Unum disputes, that during this conversation Unum informed her that "she was not eligible for coverage . . . ."  (PF ¶¶ 19, 23; DR ¶ 19).  Further, Ms. Lyman claims that Unum "refused to provide her with the requisite documentation to apply for benefits," although she admits that she received the forms from MTA.  (PF ¶¶ 23-24).  As detailed below, these disagreements do not rise to the level of disputed material facts, and do not preclude the resolution of this case by way of summary judgment motions.

---

[4] In the course of this litigation, Unum has provided the affidavit of Deborah Teter, wherein Ms. Teter avers that Unum's records do not indicate that a call took place with Ms. Lyman in March of 2015.  (See Teter Affidavit ¶ 4 ("When an insured contacts the company regarding filing a claim she speaks to a Call Center Representative/Intake Specialist.  Any such calls are documented by an entry in Unum Group's Navilink System.  In reviewing that database along with all entries regarding Ms. Lyman's claim which was filed in 2015 I found that there were no entries for any communications with Ms. Lyman or any representative of Ms. Lyman in March 2015.")).

**C.    Ms. Lyman's Application for STD Benefits**

On June 16, 2015, Unum received an Attending Physician Statement regarding Ms. Lyman's STD claim.  (DF ¶ 7; PF ¶ 13; AR II: CL-STD-17-19).  Therein, Dr. Witts represented that Ms. Lyman has a diagnosis of "chronic headache" and also suffers from difficulties with "sleep/ memory/ concentration/ reading/ writing[.]"  (AR II: CL-STD-17).  Ms. Lyman posits that her STD claim was filed in June 2015.  (PF ¶ 25 ("Finally, in June 2015, Ms. Lyman filed a claim for STD benefits with Unum.")).[5]  While this Court will accept June 2015 as the filing date for STD benefits, the record is not that clear.  For example, it was not until July 15, 2015 that Unum received Ms. Lyman's Individual Statement dated July 14, 2015.  (DF ¶ 8; PF ¶ 16; AR II: STD-25-28).  On July 24, 2015, Dr. Witts submitted a second Attending Physician Statement, this time diagnosing Ms. Lyman with orthostatic hypertension, HTN, cervical disc disease and chronic headaches.  (PF ¶ 14; AR II: CL-STD-116-17).  On August 6, 2015, another doctor, Dr. Hammer, submitted a letter regarding Ms. Lyman's psychiatric state, writing that "[i]n [her] opinion, Ms. Lyman has been psychiatrically and medically disabled since late 2013/early 2014."  (PF ¶ 17; AR II: CL-STD-100).  On August 14, 2015, Unum received the Employer's Statement for Ms. Lyman's claim.  (DF ¶ 9; PR ¶ 9; AR II: CL-STD-77-79).  On August 29, 2015, Ms. Lyman's doctor submitted additional medical records.  (PF ¶ 14; AR II: CL-STD-130-40).

On October 1, 2015, Unum denied Ms. Lyman's STD claim.  (DF ¶ 12; PF ¶ 31; AR II: 150-52).  Unum denied the claim on the grounds that Ms. Lyman was not covered under the STD policy as of the date of her disability.  (Id.).  Unum stated in relevant part:

---

[5]  Ms. Lyman submits that physician statements were filed on her behalf as early as June 11, 2015.  (PF ¶ 15).  The court will not decide which date in June constitutes the operative date on which Unum first received claim forms as the exact date in June is not determinative of the outcome of this case.

We understand you resigned from your employment as of June 24, 2014. Your employer confirmed you did not request, nor are you currently on an approved leave of absence. In order for your disability coverage to continue, you would have to have been on an approved leave of absence through your employer. Since you have not been on an approved leave of absence, your disability coverage ended as of June 24, 2014, the day you resigned, and we are unable to support your request for disability benefits.

(AR II: STD-150-52).

D. **Ms. Lyman's Application for LTD Benefits**

On February 9, 2016, Ms. Lyman's attorney requested an application for LTD benefits. (DF ¶ 10; PF ¶ 32; AR II: STD-231). The next day, on February 10, 2016, Unum opened a claim profile under the LTD policy for Ms. Lyman. (DF ¶ 11; PF ¶ 33[6]; AR IV: CL-LTD-04-06). Ms. Lyman posits that this is when she filed her LTD claim. (Lyman Memo in Support (Docket No. 48) at 3). On June 14, 2016, Unum denied Ms. Lyman's claim for LTD benefits. (PF ¶ 42; DF ¶ 13; AR V: CL-LTD-987-91). As described below, while Unum has consistently taken the position that Ms. Lyman's application for LTD benefits was untimely, it has offered various dates for when the application was made, including June 16, 2015, June 20, 2015 and March 23, 2016, and when the application was due, including February 27, 2016, February 27, 2015 and March 21, 2015. As noted above, without the possibility extension, this court calculates that Ms. Lyman's LTD benefits application was due by March 22, 2015.

In its June 14, 2016 denial letter, Unum represented that its decision to deny LTD benefits was because "[t]he policy allows a certain period of time in which the claim must be

---

[6]  The court takes notice of Unum's argument in Defendants' Response to Plaintiff's Statement of Material Facts that certain facts alleged by Ms. Lyman should be disregarded as lacking citations to the record in compliance with LR 56.1. Where asserted facts lack citation but the court finds that the same fact has been asserted by Unum or substantial support exists in the record, the court will continue to cite to those portions of Plaintiff Nancy Lyman's Statement of Material Facts (Docket No. 49).

received.  We received the claim on March 23, 2016, which was not within the required time

frame."  (AR V: CL-LTD-988).  Under a subheading titled "[I]nformation That Supports Our

Decision," Unum provided the following:

> The information in the claim file indicates Nancy Lyman initially stopped
> working on June 02, 2014 due to your diagnosis of depression, social phobia,
> headaches, insomnia and chronic pain.  We received her completed claim on
> March 23, 2016.
>
> In our telephone call on April 27, 2016, Ms. Lyman indicated that she had not
> filed a claim because she was not anticipating being out of work for this
> length of time.
>
> We received her completed claim on March 23, 2016.  According to the
> *Notice of Proof of Loss* provisions in the policy (outlined below), her claim
> should have been received no later than February 27, 2016.  Because we did
> not receive Ms. Lyman's claim by this date, we are unable to give
> consideration to her claim and benefits will not be payable.  Her claim has
> been closed.

(Id.).

Unum revised the letter denying Ms. Lyman LTD benefits twice.  (PF ¶ 43).  On June 23,

2016, Unum sent a letter to Ms. Lyman's attorney noting several changes to the decision,

including the following:

- Unum had received Ms. Lyman's completed claim on June 20, 2015 and not on
  March 23, 2016.

- According to the Provision, Unum stated it should have received the claim no later
  than February 27, 2015 as opposed to February 27, 2016.

(AR VI: CL-LTD-1015).  Unum then sent another letter on June 27, 2016 once again correcting

the dates included in their reasoning for the LTD benefits denial.  Unum's corrected letter

reads:

> We received her completed claim on June 16, 2015.  According to the Notice
> and Proof of Loss provisions in your policy (outlined below) the claim should

have been received no later than March 21, 2015.  Because we did not
receive your claim by this date, we are unable to give consideration to the
claim and benefits will not be payable.

(Id. at CL-LTD-1024) (emphasis omitted).

**E.**     **Appeals**

While the LTD claim was pending, on March 23, 2016, Ms. Lyman appealed the STD

decision.  (DF ¶ 14; PF ¶ 39; AR II: CL-STD-441-42; AR III: CL-STD-633).  In the appeal letter, Ms.

Lyman's attorney wrote, in part:

Unum terminated Ms. Lyman's claim on the basis that she was not insured
under the terms of the Plan when she ceased work.  This is incorrect, and is
directly contradicted by the information contained in Unum's file, including
without limitation, confirmation from Ms. Lyman's employer as to her date
of disability and her last date worked.

(AR II: CL-STD-441).

In a letter dated June 27, 2016, the same day Unum sent the second amended denial

letter for Ms. Lyman's LTD claim, Unum rendered a decision on Ms. Lyman's appeal of STD

benefits.  (AR III: CL-STD-753-58).  Unum informed Ms. Lyman's attorney that the STD claim had

been incorrectly denied for lack of coverage, but it was still denied because, like Ms. Lyman's

LTD claim, it was not filed on time.  (DF ¶ 15; PR ¶ 15; AR III: CL-STD-754).  Unum provided that:

It was determined that your client did not submit her claim within the
required timeframes as specified by the policy.

Because a new basis for denial is being cited, you and your client will be
provided new appeal rights.

... your client's claim was initially denied by the Benefits Center citing her
coverage ended on June 24, 2014.  The appeal review did not address the
coverage issue or if your client satisfied the definition of disability.  During
the appeal review, Unum recognized that your client's claim was submitted
late.  Outlined below are Unum's findings as it relates to the late filing.

The Short Term Disability file reflects an Attending Physician's Statement was received on June 16, 2015.

On July 15, 2015, your client submitted an Employee Statement, completed by her on July 14, 2015. She provided a last date of work of June 24, 2014.

On August 14, 2015, Unum received the Employer's Statement, which noted her date last worked of June 25, 2014. It was confirmed on September 29, 2015 that she resigned from Revere Public Schools on June 24, 2014.

Your client was notified on October 1, 2015 that her claim for Short Term Disability benefits could not be approved as she had resigned on June 24, 2015,[7] was not on an approved leave of absence, and her STD coverage ended as of her resignation date.

You appealed the decision in your letter of March 23, 2016 and requested an extension of 45 days to provide additional information before the appeal review began. It was agreed that the Short Term Disability appeal review would be pended following completion of your client's Long Term Disability claim.

On June 14, 2016, The Benefits Center notified you of the determination that Long Term Disability benefits would not be approved. An appeal review of your client's Short Term Disability claim was initiated following communication of the Long Term Disability determination. During the appeal evaluation, we determined your client's claim was submitted beyond the policy timeframes.

Your client submitted her claim form on July 15, 2015 stating she last worked on June 24, 2014. The Employer's Statement, received on August 14, 2015, reflects your client last worked on June 25, 2014.

The Short Term Disability policy states Notice and Proof of Loss should be sent within 30 days after your client's disability begins, however, she must send Unum written proof of her claim no later than 90 days after her elimination period.

The Short Term Disability elimination period is 30 days for disability due to an injury or a sickness. The 30-day elimination period would have ended on July 25, 2014. 90 days following the elimination period is October 23, 2014.

---

[7] This date should read June 24, 2014, as dated in the denial of Ms. Lyman's STD benefits. (AR II: CL-STD-150-52).

Therefore, Unum should have received your client's Short Term Disability claim no later than October 23, 2014. Unum did not receive notice of her claim until June 16, 2015, when the Attending Physician's Statement was received.

Because your client's Short Term Disability claim was not submitted within the time frames outlined by the policy, payment of benefits cannot be considered.

(AR III: CL-STD-754-55).

On December 14, 2016, Ms. Lyman filed an administrative appeal of the LTD decision.

(PF ¶ 46; AR VI: CL-LTD-1043 ("Pursuant to the terms of Unum Group's [] June 27, 2016 letter, I

am writing to appeal Unum's decision to uphold its termination of Ms. Lyman's claim for long-

term disability and life insurance waiver of premium benefits" (emphasis omitted))).[8]

As part of her appeal, Nany Lyman submitted an affidavit. (AR III: CL-STD-818-21).

Therein, she explains in detail the medical complications which prevented her from continuing

to teach and from readily filing a claim. She states in part:

I resigned from teaching at the end of the 2014 school year because I could no longer function effectively as a teacher. For about seven years, head-aches had increasingly intruded on my professional and personal life to the point that I always suffered headache pain. Arthritis and bulging discs in my neck, combined with stress, triggered constant pain that was distinguishable only by degree. To complicate matters, I was also diagnosed with clinical depression so that a cycle of headaches and depression became so debili-tating that I was often absent at work, absent enough to be alternately judged, spoken to, warned, and docked pay. I simply could teach no longer and knew I would not be able to return to the classroom in the fall....

... I wanted to be able to work, but I simply wasn't able to do so. I don't know where the time went: I didn't go anywhere or do much for fear of spending money I didn't have, and I didn't know what to do. My depression

---

[8] Although the December 14, 2016 appeal letter from Ms. Lyman's counsel represents that "Unum upheld it's termination of Ms. Lyman's claim on the basis that she was not insured under the terms of the Plan when she ceased work[,]" it is undisputed that Unum actually denied the LTD benefits for being filed late. (See PF ¶ 43).

was so bad that there were days at a time where I was unable to leave my house.  Before I knew it, March 2015 had rolled around, and I was in a bind....

(Id. at CL-STD-818-19).  In addition, she explained previous bad experiences with Unum which she alleged delayed her filing:

I had a bad experience with Unum back in 2004.  I paid for long- and short-term disability for my thirteen years as a teacher.  During that time, I had two surgeries but no sick days and did not collect from Unum.  The first time, when I had cancer, I tried unsuccessfully to apply for short-term disability because nobody could tell me how to go about it.  I called the finance office, spoke to a union rep, and called Unum three or four times....

If it weren't for my best friend Vincent, I couldn't have done anything further: the headaches were back with a vengeance (they had started again before I left work in June 2014, but intensified as time passed), I wasn't leaving the house (or even the bedroom), and I had sunk into a deep depression.  This was in March 2015.  He helped me to call the Mass Teacher's Union (MTA) and Unum by putting me on conference call and doing all the talking.  MTA gave us policy numbers, but Unum indicated I was no longer covered.  MTA seemed to think I still had time to file paperwork, so we got forms from the union and filled them out.  Vincent helped me remotely by assigning me tasks every day and looking at his own copies of the forms.  Jessica from Unum denied the claim by phone because, she said, I was no longer covered under the policy when I resigned....

(Id. at CL-STD-819-20).

Unum treated Ms. Lyman's appeal of the denial of her LTD claim as also an appeal of the revised denial of her STD claim.  (AR III: CL-STD-811 ("We received your request for an appeal review of your client's Long Term Disability and Short Term Disability claims on December 15, 2016.")).  Unum upheld both the LTD and STD denials on administrative appeal.  (DF ¶ 18; PF ¶ 47; AR III: CL-STD-964-70).  In the letter upholding both denials, Unum stated that "the previous decisions on Nancy Lyman's claims were correct.  She did not file her STD and LTD claims in a timely manner consistent with the notice and proof provisions of the policies.  The reasons she gave for her late filing were not reasonable."  (AR III: CL-STD-965).  The letter then

details the statements and claim forms Unum received as part of Ms. Lyman's application, noting both the diagnoses submitted by doctors and the doctor's descriptions of Ms. Lyman's abilities.  (See e.g. id. at CL-STD-965 ("On June 16, 2015, Unum received an Attending Physician's Statement (APS) completed by Dr. Witts on that date.  The form provided a primary diagnosis of chronic headache.  In response to the question 'Did you advise the patient to stop working?' the doctor responded, 'No.' . . . On August 13, 2015, Unum received an APS form completed by Dr. Hammer on June 11, 2015.  It provided primary diagnoses of Major Depressive Disorder, Agoraphobia, and Social Phobia.  In response to the question 'Did you advise the patient to stop working?' the doctor responded, 'No.'")).  In addition, Unum noted in the letter that Ms. Lyman "submitted additional medical records from her treating physicians to support [her] claims." (Id.).  The letter then noted the late filing of both the STD and LTD claims and, as discussed herein, analyzed the reasons Ms. Lyman had given for the delay.  (Id. at CL-STD-966).

First, Unum noted that "On April 27, 2016, Ms. Lyman spoke with [Unum], who asked her why she did not timely file her claim.  She stated she did not think her condition would last this long and she thought she would be able to return to work." (Id.).  Unum stated that "[t]his is not a reasonable basis for not filing a timely claim." (Id.).  Unum then referenced Ms. Lyman's affidavit, noting that "[o]n appeal, you provided a statement dated Oct. 21, 2016, from Ms. Lyman in which she stated that by March 2015, she 'saw no point in contacting Unum ever again.'  She stated she had a bad experience with Unum in 2004.  She stated she had two surgeries and cancer yet no one had helped her apply for STD benefits." (Id.).  Unum explained that a representative had ". . . searched our computer systems and did not find any claims from

2004.  [She] located a claim that was initiated in 2009, but it was closed when Unum did not receive a claim form from Ms. Lyman or an APS form from a doctor." (Id.).

Unum further addressed the statements in Ms. Lyman's affidavit about difficulties filling out claim paperwork.  Unum wrote that "Ms. Lyman's statement discussed the difficulties she claims to have encountered in 2004, including being intimidated by the claim forms.  Ms. Lyman was a teacher, and it is not reasonable that she would have been unable to complete a claim form within 90 days of the end of the elimination period in the policies or provide an APS form to her physician." (Id.).  Unum then offered the conclusion that "[f]iling a timely claim with Unum is not a difficult process.  Ms. Lyman has not provided a reasonable basis for not filing these STD and LTD claims in a timely manner." (Id.).

Finally, Unum addressed Ms. Lyman's statement that her medical condition prevented her from filing a timely appeal.  Unum indicated that it had reviewed the submitted medical files and then listed in bullet points excerpts of Ms. Lyman's medical files on which it had relied in making its appellate decision.  (See e.g. id. at CL-STD-967 ("Dr. Hammer's Dec. 3, 2013, office visit note reported increased work stress, and that Ms. Lyman was worried she would not get her teaching license renewed, since she 'may not finish Master's degree by then.'  She was 'working with UCONN on this.'")).  In the last bullet point, Unum noted that:

> Dr. Hammer's office visit note of Dec. 2, 2014, noted [Ms. Lyman] was not receiving unemployment benefits.  Her Oct. 21, 2016 statement also states that by March 2015, she had been denied unemployment benefits (the appeal was noted to have been denied in Dr. Hammer's December 2015 office visit note).  Given this information, she must have applied for unemployment benefits prior to Dec. 2, 2014.

(Id.).  Unum then concluded that, based on the review of the medical files:

... during the period in question (her last date worked June 24, 2014, through Oct. 23, 2014, on the STD claim and March 22, 2015, on the LTD claim), information indicates Ms. Lyman knew in 2013 that she was required to meet some new licensing requirements in order to be able to continue teaching after June 2014. Ultimately, she did not meet the new requirements, and she resigned her employment on June 24, 2014.

Almost a year later, she filed a disability claim. You state her medical condition prevented her from filing the claims sooner. Her employer has indicated she was not on a leave of absence, and had not applied for a leave of absence in June 2014. During the period in question, she was able to apply for unemployment benefits at some point prior to Dec. 2, 2014. Her doctors' office visit notes indicate she was looking for and applying for jobs outside of teaching. At some time between July 23, 2014, and Oct. 7, 2014, she spent a month in Illinois providing assistance to her sister, brother-in-law and nephew due to the sister and brother-in-law having been seriously injured in a car accident. She later reported she flew there, so she was able to plan the trip and negotiate travel through airports. These activities are not consistent with a person who lacked legal capacity to file her claims in a timely manner. There is no indication it was not possible for her to provide notice and proof of claim within the timeframes specified by the policies.

(Id. at CL-STD-968).

Unum concluded the letter by explaining that it was not compelled to make a ruling on Ms. Lyman's disability since Unum had determined the claims were filed late. (Id.). Unum also explained that it was not required to evaluate whether it was prejudiced by the late filing in making its decision, as the state of Massachusetts does not require such an analysis. (Id.).

### F.    Unum's Internal Policies

Ms. Lyman submits language from Unum's internal policies which she argues is instructive to this court's decision. As detailed below, it is Unum's position that Ms. Lyman is relying on specific provisions that relate to different types of policies than the ones she held.

First, Ms. Lyman cites language from Unum's Benefits Center Claims Manual, which provides the following:

Our policies require that claims be filed on a timely basis.  The applicable provisions usually are contained in the notice and proof of claim section(s) of the policy.  When we are given late notice of a claim, our ability to properly decide the claim can be prejudiced.  Some states require the insurer to show that it has been prejudiced before making an adverse claim decision because a claim was filed late.  Follow the guidance below as to whether to conduct a prejudice review when we have been given late notice of a claim.

Reminder: Each claim is unique and should be evaluated on its own merits.  The actual policy governing the claim must be referenced.

(Pl. Ex. A at 2 (emphasis omitted)).  The Claims Manual further contains a listing of jurisdictions that "do not require a prejudice analysis."  (Id. at 4).  Massachusetts is a jurisdiction for which no such analysis is required.  (Id.).

The Claims Manual further provides that for Group Life and All VB Products (Excluding VB HSBR):

Although our various policies include different time frames for claimants to file a claim, we have administratively determined that we will accept all claims filed within 1 year and 90 days from the claimed date of loss as timely.  If the claim is filed after the 1 year and 90 day period, and the policy does not otherwise afford more time, the claim is late and we may determine our liability per the guidance contained in the *Jurisdictions That Do Not Require a Prejudice Analysis* and *Jurisdictions in Which We Should Perform a Prejudice Analysis* sections below.

(Id. at 3).

For VB Disability Claims, the Claims Manual provides:

We allow the claimant 1 year and 90 days to file initial proof of claim.  If a late claim is received and coverage has continued to the date of claim, the claim for disability for the immediately previous year and 90 days is not late; however, the claim for disability for any dates prior to the year and 90 days is late.

(Id.). Ms. Lyman does not argue that she was insured under either a Group Life or VB policy, and she has submitted these provisions just for comparison purposes. (Lyman Opposition, Docket No. 51 at 7).

Additional facts will be included as necessary.

### III. PROCEDURAL HISTORY

On August 17, 2017, Nancy Lyman filed the complaint in this matter naming as defendants Unum and the MTA. Therein, she alleged two causes of action, one for enforcement of the terms of the Plan and for unpaid benefits and a second for associated attorneys' fees and costs. (Complaint, Docket No. 1). On December 5, 2017, Judge Casper entered an order dismissing the MTA from the suit. (Docket No. 11). The matter was then referred to this session and the parties consented to having the matter adjudicated for all purposes. (Docket No. 21).

This court allowed limited discovery and the submission of affidavits in this case. As Ms. Lyman attested to in her discovery briefing, the scope of review nevertheless remained limited to the information available to Unum at the time it made its decisions. (See Docket No. 30 ("Ms. Lyman is not attempting to discover and to introduce untimely evidence about her medical condition or occupation that she did not properly put before Unum at the time Unum evaluated her claim. Ms. Lyman merely seeks to include in the Record the Internal Guidelines regarding claims procedures available to Unum decision-makers at the time it decided her claim to ensure Unum is interpreting the Proof of Loss Provision fairly and consistently."). (See also Docket No. 29 ("Ms. Lyman is not seeking to expand the Record to include new information not before Unum when it made the decision to deny her claims.")).

On October 1, 2018, Nancy Lyman filed her Motion for Judgment on the Record and associated memorandum.  (Docket Nos. 47, 48 respectively).  Also on October 1, 2018, Unum filed Unum Group and Unum Life Insurance Company of America's Motion for Summary Judgment and the associated memorandum.  (Docket Nos. 44, 45 respectively).  After full briefing on those summary judgment motions, the court held a hearing on December 12, 2018. Unum subsequently filed a motion to submit new authority on February 28, 2019 (Docket No. 65), which Ms. Lyman opposed on the grounds that the new authority was not applicable. (Docket No. 66).  The court ruled it would consider both the new authority and Ms. Lyman's response in the context of the summary judgment decision.  (Docket No. 67).

## IV.  STANDARD OF REVIEW

### A.  Summary Judgment Standard for ERISA Cases

The court must analyze the instant motions under applicable ERISA precedent.  "In an ERISA benefits case, where review is based only on the administrative record before the plan administrator . . . summary judgment is simply a vehicle for deciding the issue, and not a screening mechanism for trial."  Summersgill v. E.I. Dupont De Nemours & Co., No. 13-10279, 2016 WL 94247 (D. Mass. Jan. 6, 2016) (internal quotations and citations omitted).  "The Court sits more as an appellate tribunal than as a trial court and evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.  As such, the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."  (Id.) (internal quotations and citations omitted).

Where an employee benefits plan allows for the insurer to use its discretion in interpreting the plan, the court must review the claims in a deferential manner.  Here, it is undisputed that Unum had discretion to interpret the terms of the Plan.  (Unum Memo in Support, Docket No. 45 at 7 ("The plans provide Unum Life with the discretionary authority to determine benefit eligibility"); Lyman Memo in Support at 1 ("The standard of review is for abuse of discretion.")).  The plan language in this regard is also clear.  (See AR II: CL-STD-167 ("When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy.")).  Therefore, this court must "uphold the decision unless it is arbitrary, capricious, or an abuse of discretion."  Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 698 (1st Cir. 2007).

In reviewing under this standard, the court "will uphold an administrator's decision if the decision was reasoned and supported by substantial evidence, meaning that the evidence is reasonably sufficient to support a conclusion and contrary evidence does not make the decision unreasonable."  Id.  See also O'Shea v. UPS Ret. Plan, 837 F.3d 67, 73 (1st Cir. 2016) ("We need only consider whether UPS's interpretation of the Plan and its application of the Plan terms to the facts of this case was reasoned and supported by substantial evidence."  (internal quotation and citation omitted)); Summersgill v. E.I. Dupont De Nemours & Co., 2016 WL 94247, at *7 ("Under this standard, the Court asks whether a plan administrator's determination is plausible in light of the record as a whole, or, put another way, whether the decision is supported by substantial evidence in the record." (internal quotation and citation omitted)).  In making this determination, "the Court is not to substitute its judgment for that of the [administrator]."  Id. (internal quotation and citation omitted).  See also D&H Therapy Assocs., LLC v. Boston Mut.

Life Ins. Co., 640 F.3d 27, 35 (1st Cir. 2011) ("We have emphasized that our review of whether a plan administrator abused its discretion does not require that we determine either the best reading of the ERISA plan or how we would read the plan de novo." (internal quotation and citations omitted)). Furthermore, "the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Summersgill v. E.I. Dupont DeNemours & Co., 2016 WL 94247, at *7 (internal quotation and citation omitted). This is because "[s]ufficiency, of course, does not disappear merely by reason of contradictory evidence." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

Under this standard, Ms. Lyman has the burden to show that Unum's decision was unreasonable. Terry v. Bayer Corp., 145 F.3d 28, 34 (1st Cir. 1998) ("[Claimant] bears the burden of making a showing sufficient to establish a violation of ERISA, namely, that the benefit termination was unreasonable." (internal quotation omitted)). For the reasons addressed herein, Ms. Lyman has failed to meet this burden.

## V. DISCUSSION

Ms. Lyman argues that "Unum's rigid interpretation of the Plan to contractually bar Ms. Lyman's claims is contrary to the clear language of the Plan and is unreasonable considering its internal guidance to claims representatives regarding the interpretation of the Provision[.]" (Lyman Memo in Support at 1). Alternatively, Ms. Lyman argues that "even if Unum's interpretation is correct, Unum's decision must be overturned because: 1) Ms. Lyman has met her burden of proving it was 'not possible' for her to file her claim in Unum's required timeframe due to Unum's misrepresentations regarding her eligibility for coverage as well as the severity

of her medical condition; and 2) Unum cannot demonstrate it was prejudiced by Ms. Lyman's alleged late filing." (Id.). The court will consider each of Ms. Lyman's arguments in turn.

**A.** **Unum's Interpretation of the Plan Provision**

**The Possibility Language in the Provision**

Unum did not abuse its discretion in interpreting the Provision to require proof that it was not possible for Ms. Lyman to file a timely claim. As detailed above, the Provision reads as follows:

> We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Unum written proof of your claim no later than 90 days after your elimination period. **If it is not possible to give proof within 90 days it must be given no later than 1 year after the time proof is otherwise required** except in the absence of legal capacity.

(PF ¶ 8; DF ¶ 3; AR III: CL-STD-927 (emphasis added)). The clear language of the Provision allows for Unum to deny claims where it *was* possible for a claimant to file within the allotted amount of time and the claimant failed to do so.

Ms. Lyman first argues that "Unum's interpretation writes [the possibility] language out of the Provision, altogether." (Lyman Memo in Support at 9). She also argues that Unum did not evaluate whether it was possible for her to file a timely claim, but instead focused only on whether she had the legal capacity to do so. (See Lyman Opposition (Docket No. 51) at 9 ("In litigation, Unum has limited the inquiry to whether Ms. Lyman lacked the legal capacity to file her claim in the 90-Day Period.")). The undisputed facts, however, clearly establish that Unum fully considered the possibility language, and conducted an extensive analysis as to whether it was possible or not for Ms. Lyman to file on time. Unum's conclusion that it had been possible

for Ms. Lyman to file a timely application but that she had failed to do so was not arbitrary or capricious.

As detailed fully in Unum's letter upholding the STD and LTD denials on administrative appeal, and as quoted extensively above, Unum determined that Ms. Lyman's explanation that she delayed filing because she thought she was going to be able to return to work was "not a reasonable basis for not filing a timely claim," and that her contention that she was intimidated by the claims form was not credible given the fact that filing a claim is not a difficult process and Ms. Lyman was a teacher.  (AR III: CL-STD-964-70).  Similarly, Unum explained that the activities in which Ms. Lyman engaged during the relevant period, including applying for unemployment benefits, looking for and applying for jobs, arranging for travel and attending to her injured sister and brother-in-law do not support Ms. Lyman's position that it was not possible for her to provide timely notice or file a timely application.  (Id.).  There is no basis for this court to disturb Unum's conclusion.

### Comparison to Other Unum Policies

Ms. Lyman next argues that Unum failed to interpret the Provision consistently with internal guidance and past decisions.  "A determination of reasonableness . . . depends on (1) whether the interpretation renders any language in the plan meaningless or intentionally inconsistent, (2) whether the interpretation is clearly contrary to the clear language of the plan, and (3) whether the provision at issue has been interpreted and applied consistently."  Cheever v. John Hancock Mut. Life Ins. Co., 206 F. Supp. 2d 155, 165 (D. Mass. 2002) (citing Caola v. Delta Air Lines, Inc., 59 F. Supp. 2d 166, 170 (D. Mass. 1999) (internal quotations omitted).  If Unum strayed from its own internal guidance or from previous interpretations of the Provision

when denying Ms. Lyman's claims, that inconsistency can evidence abuse of discretion.  <u>Glista v. Unum Life Ins. Co. of Am.</u>, 378 F.3d 113, 124 (1st Cir. 2004) ("By creating and promulgating internal guidance documents, plan administrators choose to exercise their discretion to define terms.  When courts place weight on those definitions, they do not narrow the plan administrator's discretion beyond what the administrator itself has chosen to do.").

Ms. Lyman claims that Unum's interpretation of the Provision in her case is inconsistent with Unum's administrative determinations on similar language in other policies, whereby Unum has decided to allow claimants an extra year to file absent a possibility assessment.  (Lyman Memo in Support at 9).  However, Unum's Benefit Center Claims Manual provides that "[e]ach claim is unique and should be evaluated on its own merits.  The actual policy governing the claim must be referenced."  (Pl. Ex. A at 2).  As described above, Group Life and VB Products are treated differently in determining the timeliness of applications, but Ms. Lyman did not have either of those types of policies.[9]  Similarly, while some jurisdictions require that untimely applications can be accepted if the company is not prejudiced by the delay, other jurisdictions, such as Massachusetts, do not require a prejudice review.  Ms. Lyman's applications were

---

[9]  Ms. Lyman has not argued that there is no basis for treating those types of *policies* differently.  Rather, she argues "Unum's inconsistent interpretation of the same provision [in differing policies] demonstrates its interpretation of the Provision in Ms. Lyman's case is unreasonable."  (Lyman Opposition at 8).  Unum represents, and Ms. Lyman does not dispute, that the Group Life and VB policies were different from her own.  (<u>See</u> Unum Opposition at 5 ("The claims manual is intended to provide guidance to benefit specialists who may administer a variety of different types of claims.  For instance, the Late Notice provision of the claims manual applies to STD claims, LTD claims, individual disability ("IDI") claims, Group Life claims, long-term care ("LTC"), life waiver premium claims ("LWOP"), accidental death and disability ("AD&D"), and voluntary benefit ("VB") products.  Some of these products are governed by ERISA, some are not.  In addition, depending on the jurisdiction, different statutory, regulatory and common law rules may apply.").  Unum's decision is not contrary to internal guidance related to the type of policy Ms. Lyman had.

considered in accordance with the guidance sections applicable to her policies.  There was no abuse of discretion.

Finally, Ms. Lyman has submitted two letters from Unum to other claimants asking for an explanation as to why applications were untimely.  This information was required because in their cases Unum had to "conduct an analysis to determine if the delay has prejudiced our ability to investigate or decide the claim. . . ."  (Pl. Ex. D at 2, 7).  Since no such analysis was required in Ms. Lyman's case as Massachusetts does not require that an untimely application be accepted absent prejudice, these letters are inapplicable to her case.  Ms. Lyman has failed to carry her burden and show that Unum was unreasonable in interpreting the Provision.

### B.      Unum's Possibility Decision

Ms. Lyman argues that if Unum did not abuse its discretion in interpreting the possibility language, Unum abused its discretion in finding that it was possible for Ms. Lyman to file on time because Unum had told her she was not covered by their policy and because of her medical condition.  These arguments are not persuasive.

### Unum's March 2015 Representation

The parties dispute the nature of what was said to Ms. Lyman in March of 2015.  Ms. Lyman claims, through affidavits submitted in both this case and in her administrative appeal, that in March of 2015, she, along with her best friend, Vincent Giordano, contacted Unum and the MTA to discuss her disability and desire to file claims for STD and LTD benefits under the Plan.  (PF ¶ 19; AR III: CL-STD-820; Lyman Affidavit ¶¶ 15-16).  Unum disputes this fact.  (DR ¶ 19 (". . . as set forth in the Affidavit of Deborah Teter, there were no communications with Ms. Lyman or a representative of Ms. Lyman prior to June 2015")).  Ms. Lyman claims, and

Unum disputes, that during this conversation Unum informed her that "she was not eligible for coverage . . . ." (PF ¶¶ 19, 23; DR ¶ 19). Further, Ms. Lyman claims that Unum "refused to provide her with the requisite documentation to apply for benefits." (PF ¶ 23). She does admit, however, that she obtained the requisite documentation from MTA. (Id. ¶ 24).

As a preliminary matter, this disagreement between the parties does not constitute a genuine issue of material fact such that disposition of this case through summary judgment is inappropriate. First, as the court's review is based on the administrative record, summary judgment remains the appropriate vehicle for the disposition of this ERISA matter. "Where review is properly confined to the administrative record before the ERISA plan administrator . . . there are no disputed issues of fact for the court to resolve." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 518 (1st Cir. 2005). See also id. at 519 (. . . "the focus of judicial review, under the arbitrary and capricious standard, is ordinarily on the record before the administrator and at least some very good reason is needed to overcome that preference."); Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 852 F.3d 105, 110 (1st Cir. 2017) ("As we previously have noted, a motion for summary judgment has a different office in administrative law cases. There, a summary judgment motion is simply a vehicle to tee up a case for judicial review based on the administrative record." (internal quotations and citations omitted)). "That the parties brought the issues forward on cross-motions for summary judgment is not significant; substance must prevail over form. The controlling feature is that the parties have presented the case to the court for an up-or-down decision on the administrative record . . . and judicial decisionmaking proceeds on that basis." Id. (internal quotations and citations omitted).

Second, Unum was not unreasonable in denying Ms. Lyman's claims as late despite the information before it about the possible misrepresentation from March of 2015. In her appeal to Unum of the STD and LTD claim decisions, Ms. Lyman described the alleged misrepresentation as follows:

> This was in March 2015. [Vincent] helped me to call the Mass Teacher's Union (MTA) and Unum by putting me on conference call and doing the talking. MTA gave us policy numbers, but Unum indicated I was no longer covered. MTA seemed to think I still had time to file paperwork, so we got forms from the union and filled them out. Vincent helped me remotely by assigning me tasks every day and looking at his own copies of the forms. Jessica from Unum denied the claim by phone because, she said, I was no longer covered under the policy when I resigned. She told me instead to file the short-term claim for my carotid artery surgery a few years ago. I asked for the denial in writing, directions to appeal, and I then set about the paperwork for the other claim. These processes added time, but they did not add information because nothing arrived in the mail from Jessica. Then we spent time filling out paperwork for Vicky for the original short-term claim in order to restart the process. I'm not sure how much time Vincent and I spen[t] telephoning and researching, but certainly they added to the delay in filing paperwork.

(AR III: CL-STD-820).

Ms. Lyman's and Mr. Giordano's affidavits submitted in the course of this litigation make similar allegations. (See Docket Nos. 60, 61). Accepting such allegations as true, the alleged conversations do not explain or justify the untimely filings.

Ms. Lyman's claim for STD benefits was due by October 23, 2014 (90 days after the end of the 30 day STD elimination period), unless it was impossible for her to do so or unless she lacked legal capacity. Any statements that were made after October 23, 2014, such as any in March of 2015, could not have possibly delayed Ms. Lyman from filing on time. It was therefore reasonable for Unum to deny Ms. Lyman's STD benefits as untimely over her objection that Unum had told her she was ineligible.

The timeline for LTD benefits admittedly is not as clear cut.  The proof of loss for the LTD claim was due by March 22, 2015 (90 days after the end of the 180 day LTD elimination period), unless it was not possible or unless she lacked legal capacity.  Thus, any impossibility caused by representations made by Unum could be relevant if they occurred prior to March 22, 2015, as Ms. Lyman avers in her affidavit submitted in the course of this litigation.  (See Lyman Affidavit ¶¶ 15, 16 (". . . on or about March 11th or 12th, with Vincent on the telephone, we called the Massachusetts Teacher's Association (MTA) to obtain copies of the short- and long-term disability policies. . . . Vincent and I then called Unum together to obtain the application documents to file for disability benefits, but we were told by Unum that I was no longer covered under the disability policies when I resigned.").  Nevertheless, as Ms. Lyman has admitted, she received the necessary documents from MTA and proceeded to complete them in an untimely manner.  (See AR III: CL-STD-768).  She does not contend that she relied on the alleged conversation in delaying the completion of her application.  Nor does she explain how anything that Unum did caused her to wait until June 2015 (per Unum) or February 2016 (per Ms. Lyman) to submit her LTD application.  (See AR VI: CL-LTD-1024; Lyman Memo in Support at 3).  Thus, even assuming that the conversation took place, which UNUM denies, it does not excuse Ms. Lyman's untimely applications.

Ms. Lyman charges that Unum failed to investigate the alleged phone call in connection with its assessment of whether it was possible for her to file her application within a year.  (See Lyman Reply, Docket No. 59 at 3).  The record establishes, however, that Unum did review its records to ascertain if it had prior contact with Ms. Lyman which would support her statement in her October 21, 2016 letter that "by March 2015, she 'saw no point in contacting UNUM ever

again.'" (See AR III: CL-STD-966). However, it found no record support for her claims.[10] In any event, as detailed above, the alleged conversation does not explain the delay in filing, even accepting Ms. Lyman's description of events in full.[11]

### Ms. Lyman's Medical Condition

The record further establishes that Unum did not abuse its discretion in finding it was possible for Ms. Lyman to file a timely claim despite her medical condition. Ms. Lyman argues that "[her] medical condition prevented her from filing her disability claims in the 90-Day Period, as [she] explained to Unum during her August 13, 2015 call [], her April 27, 2016 call [] and in her statements provided to Unum." (Lyman Reply at 7). Ms. Lyman argues that in the context of those statements and the expansive medical record otherwise before Unum at the time, Unum was wrong to deny her the extra time to file. This court finds that although Unum had extensive evidence of Ms. Lyman's condition, its decision that it was possible for Ms. Lyman to file on time was reasoned and supported by substantial evidence.

---

[10] In the letter denying her appeal, Unum explained:

> On appeal, you provided a statement dated Oct. 21, 2016, from Ms. Lyman in which she stated that by March 2015, she 'saw no point in contacting Unum ever again.' She stated she had a bad experience with Unum in 2004. She stated she had two surgeries and cancer yet no one had helped her apply for STD benefits.
>
> I searched our computer systems and did not find any claims from 2004. I located a claim that was initiated in 2009, but it was closed when Unum did not receive a claim form from Ms. Lyman or an APS form from a doctor.

(Id.).

[11] For this reason, the court will not address Ms. Lyman's speculations as to why the conversation was not in Unum's files. (See Lyman's Reply at 4, 6). This court does note, however, that Ms. Lyman's arguments related to Unum's potential deletion of a record or failure to record a call are speculation and cannot be relied upon by this court at the summary judgment stage. Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). Furthermore, Ms. Lyman's argument ignores the fact that it is her burden to prove error in this case. Terry v. Bayer Corp., 145 F.3d at 34.

Unum considered Ms. Lyman's medical records when it made its initial decision and when conducting its internal appeal.  Unum documented the medical information Ms. Lyman provided in various phone calls and letters.  (See AR II: CL-STD-58; AR IV: Cl-LTD-0433).  Unum ultimately decided that Ms. Lyman "did not file her STD and LTD claims in a timely manner consistent with the notice and proof provisions of the policies.  The reasons she gave for her late filing were not reasonable."  (AR III: CL-STD-965).  Unum provided a number of reasons for its decision.  Unum explained therein that it had reviewed forms from Dr. Witts, Dr. Hammer and Ms. Lyman claiming Ms. Lyman suffered from chronic headache, neck pain, major depressive disorder, agoraphobia, and social phobia.  (Id.).  In its letter denying both appeals, Unum acknowledged that in connection with the appeals Ms. Lyman submitted additional medical records.  (Id.).  Unum acknowledged Ms. Lyman's representation that she has difficulty filling out forms, and refused to accept that reason for late filing.  (See id. at CL-STD-966 ("Ms. Lyman was a teacher, and it is not reasonable that she would have been unable to complete a claim form within 90 days of the end of the elimination period in the policies or provide an APS form to her physician.")).  Unum then explicitly recognized Ms. Lyman's argument that her medical condition prevented a timely filing.  (Id. ("You have stated on appeal that Ms. Lyman's medical condition prevented her from filing a timely appeal.  I have reviewed the available medical records and noted the following . . .")).  Unum then extensively quotes from Ms. Lyman's medical records.

In quoting from Ms. Lyman's medical records in its written appeal decision, Unum quoted portions of the records which discuss Ms. Lyman's activities and professional plans as opposed to her diagnoses or certain symptoms.  (e.g. id. at CL-STD-966 ("Dr. Hammer's July 23,

[29]

2014, office visit note stated Ms. Lyman had left her job due to an inadequate teaching license with new requirements. She felt it was too stressful teaching ESL students (English as a second language), especially with her health problems. Her finances were uncertain and she was looking into other jobs, for example, a job with the State. She was contemplating visiting her sister and brother-in-law in Illinois, who had been in a terrible motor vehicle accident.")). Relying on these statements, Unum rejected Ms. Lyman's argument that her medical condition prevented her from filing on time. Unum provided:

> You state her medical condition prevented her from filing the claims sooner. Her employer has indicated she was not on a leave of absence, and had not applied for a leave of absence in June 2014. During the period in question, she was able to apply for unemployment benefits at some point prior to Dec. 2, 2014. Her doctors' office visit notes indicate she was looking for and applying for jobs outside of teaching. At some time between July 23, 2014, and Oct. 7, 2014, she spent a month in Illinois providing assistance to her sister, brother-in-law and nephew due to the sister and brother-in-law having been seriously injured in a car accident. She later reported she flew there, so she was able to plan the trip and negotiate travel through airports. These activities are not consistent with a person who lacked legal capacity to file her claims in a timely manner. There is no indication it was not possible for her to provide notice and proof of claim within the timeframes specified by the policies.

> ... You have stated on appeal that Unum failed to provide a full and fair review of Ms. Lyman's claims, in violation of ERISA regulations, because Unum did not consider her symptoms and functional limitations given her occupation, and that Unum did not consider her as a whole person when taking into account the impact her conditions have on her ability to perform the duties of her occupation.

> You are correct in stating that Unum did not evaluate the medical and vocational components of the claim to determine whether or not Ms. Lyman was disabled, as defined by the policies. However, Unum did not violate ERISA regulations. Ms. Lyman did not file her claims in a timely manner consistent with the requirements under the policies. Because the claims were filed late, Unum is not required to determine whether or not Ms. Lyman was disabled. The state of Massachusetts does not require Unum to prove it was prejudiced by the late filing.

Based on the above, we have determined Ms. Lyman's claims were filed late. Her reasons for the late filing were not reasonable, and she has not provided evidence to support it was not reasonably possible for her to file her claims in a timely manner. The decision to deny her STD and LTD claims was appropriate.

(Id. at CL-STD-968). However, the existence of contrary information does not make an otherwise reasonable decision by Unum an abuse of discretion. The record establishes that Unum properly considered all of the evidence before it. It did not selectively pick facts from the record in order to support its conclusion. See Conrad v. Reliance Std. Life Ins. Co., 292 F. Supp. 2d 233, 238 (D. Mass. 2003) (finding decision unreasonable where it relied on a doctor's conclusions which "select[ed] for emphasis just one or two elements of a medical report, while ignoring additional facts and important context"). See also Al-Abbas v. Metro. Life Ins. Co., 52 F. Supp. 3d 288, 296 (D. Mass. 2014) (Holding that while "the mere existence of contrary evidence in the record is not sufficient to render a determination arbitrary and capricious . . . a plan administrator may not 'simply ignore contrary evidence, or engage with only that evidence that supports his conclusion.'" (citing Petrone v. Long Term Disability Income Plan for Choices Eligible Emps. of Johnson & Johnson & Affiliated Cos., 935 F. Supp. 2d 278, 293 (D. Mass. 2013))). Although Ms. Lyman's condition certainly appears to have made it difficult to perform certain tasks, a wholistic view of the record shows that Unum was not unreasonable in determining it was possible for her to file on time. (See AR II: CL-STD-64, 130-31). It was Unum's responsibility to evaluate these records, which it expressly did. (See, e.g., AR II: CL-STD-58-59).

Ms. Lyman additionally argues that Unum failed to understand the record before it, and that "Unum missed the connection between what Ms. Lyman hoped she would be able to do,

and the reality of her medical condition, which made this expectation impossible." (Lyman

Reply at 11). Unum considered but rejected this argument. (AR III: STD-CL-966 ("She stated she

did not think her condition would last this long and she thought she would be able to return to

work. This is not a reasonable basis for not filing a timely claim.")). It was not an abuse of

discretion for Unum to require Ms. Lyman to comply with the filing obligations even if she

hoped her condition would improve. See Monast v. Johnson & Johnson, 680 F. Supp. 2d 299,

304 (D. Mass. 2010) (". . . if the ERISA plan expressly provides that its members are obligated to

[act], we do not think it can be considered 'unfair' to require plan members to abide by the

agreement." (quoting Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 279 (1st Cir.

2000))). More importantly, Unum considered what Ms. Lyman actually did when determining

that filing the application was among the items she could have accomplished. Unum was not

mislead by Ms. Lyman's high aspirations. In sum, Unum fully evaluated Ms. Lyman's arguments

and made a reasoned decision supported by evidence that it was possible for her to file on

time.

### C. Prejudice

Finally, Ms. Lyman argues that Unum abused its discretion in finding it was possible for

Ms. Lyman to file on time because "Unum cannot demonstrate it was prejudiced by Ms.

Lyman's alleged late filing." (Lyman Memo in Support at 1). Unum's Claims Manual lists

Massachusetts as a jurisdiction which does not require a prejudice analysis, and Unum confirms

that position in its briefing before this court. (Pl. Ex. A at 4; Unum Opposition (Docket No. 53)

at 10).

Ms. Lyman relies on Mass. Gen. Laws ch. 175 § 112, which provides that "[a]n insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, . . . unless the insurance company has been prejudiced thereby." "[W]hile the First Circuit does not appear to have addressed the issue, courts in this district have found that the Massachusetts notice/prejudice rule set forth in Mass. Gen. L. ch. 175, § 112 does not apply in the ERISA context. That is, the plan administrator can refuse to address an untimely claim without first establishing that [it] was actually prejudiced by the late filing." Leonard v. Gen. Elec. Co., 199 F. Supp. 3d 400, 408 (D. Mass. 2016). This court and others in this district have refused to extend the notice-prejudice rule to ERISA cases, and the court sees no reason to stray from that reasoning today. See e.g., Tetreault v. Reliance Standard Life Ins. Co., No. 10-11420, 2011 WL 7099961 at *9 (D. Mass. Nov. 28, 2011); Monast v. Johnson & Johnson, 680 F. Supp. 2d at 306.

Ms. Lyman argues that while courts have refused to extend the notice-prejudice rule to denials based on late appeals, that holding should not apply here where the denial occurred because of a late filing at the initial benefits claim stage. See Edwards v. Briggs & Stratton Ret. Plan, 639 F.3d 355, 363 (7th Cir. 2011) (the Seventh Circuit found prejudice analysis in liability insurance case applicable to initial filing, but declined to extend it to ERISA appeals). The Edwards court recognized that the state prejudice requirement applied only to liability insurance, not to ERISA plans. Id. As the Massachusetts statute, like the Wisconsin statute at issue in Edwards has been limited to liability insurance, this court finds no reason to stray from the well-reasoned cases in this district declining to extend the statute to ERISA cases. See Walley v. Agri-Mark, Inc., No. 00-11393, 2002 WL 1796917 at *2 (D. Mass. Aug. 1, 2002) ("the

fact that the state legislature has expressly limited the rule to liability insurers weighs heavily against extending the rule to disability insurers").[12]  Thus, there is no basis to disturb Unum's decision not to engage in a prejudice analysis.

## VI.  CONCLUSION

For the reasons stated herein, Ms. Lyman's Motion for Judgment on the Record (Docket No. 47) is DENIED and Unum's Motion for Summary Judgment (Docket No. 44) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[12]  After the hearing on this matter, the parties submitted briefing on new case law from the First Circuit Court of Appeals in Fortier v. Hartford Life & Accident Ins. Co., 916 F.3d 74, 85 (1st Cir. 2019), wherein the First Circuit held that "[t]he exhaustion requirement – and several of its underlying goals – would be undercut by an extension of a state law notice-prejudice rule to ERISA appeals."  Ms. Lyman contends that Fortier, like Edwards, should be limited to not extending the prejudice requirements to ERISA appeals.  (See Plaintiff's Opposition to Defendants' Motion to File New Authority (Docket No. 66) ("Fortier specifically addressed New Hampshire's common law notice-prejudice rule to untimely ERISA appeals, not initial claims for benefits under Massachusetts law." (emphasis in original))).  However, both Edwards and Fortier recognize expressly or implicitly that any state law prejudice requirement does not apply in the ERISA context.  This court finds no reason to disturb that conclusion.